# IN THE COURT OF APPEALS OF IOWA

No. 19-1629
Filed December 16, 2020

**ANDREAS C.K. BENFORD,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.

_____

Appeal from the Iowa District Court for Jasper County, Randy V. Hefner,
Judge

Andreas Benford appeals the dismissal of his petition for judicial review.

**AFFIRMED.**

Andreas C.K. Benford, Des Moines, self-represented appellant.

Thomas J. Miller, Attorney General, and John R. Lundquist, Assistant
Attorney General, for appellee State.

Considered by Mullins, P.J., and May and Schumacher, JJ.

**MAY, Judge.**

Andreas Benford appeals the dismissal of his petition for judicial review. We affirm.

**I. Background**

In July 2009, Benford pled guilty to third-degree sexual abuse and enticing away a minor. *See* Iowa Code §§ 709.4(2)(c)(4), 710.10(2) (2009). The same day, the district court sentenced Benford to an indeterminate term of incarceration not to exceed fifteen years. The court also imposed the special sentence required by Iowa Code section 903B.1. It provides that certain sex offenders

> shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906. The board of parole shall determine whether the person should be released on parole or placed in a work release program. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole or work release. The person shall be placed on the corrections continuum in chapter 901B, and the terms and conditions of the special sentence, including violations, shall be subject to the same set of procedures set out in chapters 901B, 905, 906, and chapter 908, and rules adopted under those chapters for persons on parole or work release. The revocation of release shall not be for a period greater than two years upon any first revocation, and five years upon any second or subsequent revocation. A special sentence shall be considered a category "A" sentence for purposes of calculating earned time under section 903A.2.

*Id.* § 903B.1.

Benford took no direct appeal. But in the years since, he has repeatedly sought judicial review of issues related to his sentences. Three of those cases ended in appeals to this court. *See Benford v. State*, No. 19-1590, 2020 WL

_____ (Iowa Ct. App. Dec. 16, 2020) (dismissing his appeal); *Benford v. State*, No. 17-1253, 2018 WL 3912118, at *1 (Iowa Ct. App. Aug. 15, 2018) (denying Benford relief); *Benford v. Iowa Dist. Ct.*, No. 17-0272, 2018 WL 1433123, at *2 (Iowa Ct. App. Mar. 21, 2018) (deciding Benford's constitutional challenge was not ripe for adjudication and annulling the writ of certiorari).

The current case began in early 2019, when Benford sent a series of petitions for declaratory ruling to the Iowa Department of Corrections (IDOC).[1] Though his petitions were detailed, Benford's core request was simple: He wanted the IDOC to compute a "TDD"—a tentative discharge date—for his special sentence under section 903B.1.

Because IDOC did not act on Benford's petitions within sixty days, they were deemed denied by operation of law.[2] But the IDOC did send a responsive letter to Benford. It identified a date ("7-15-19") on which Benford would become eligible to seek consideration of a discretionary discharge of his special sentence. But the letter did not identify a date on which Benford's "lifetime special sentence" was expected to discharge.

---

[1] One petition referred to the Iowa Board of Parole.

[2] Iowa Code § 17A.9(8) (2019) provides:

> If an agency has not issued a declaratory order within sixty days after receipt of a petition therefor, or such later time as agreed by the parties, the petition is deemed to have been denied. Once a petition for a declaratory order is deemed denied or if the agency declines to issue a declaratory order pursuant to subsection 5, paragraph "d", a party to that proceeding may either seek judicial review or await further agency action with respect to its petition for a declaratory order.

Benford sought judicial review. Benford claimed the IDOC's refusal to compute a discharge date was not consistent with Iowa Code section 906.15(1).[3] It provides:

> Unless sooner discharged, a person released on parole shall be discharged when the person's term of parole equals the period of imprisonment specified in the person's sentence, less all time served in confinement. Discharge from parole may be granted prior to such time, when an early discharge is appropriate. The board shall periodically review all paroles, and when the board determines that any person on parole is able and willing to fulfill the obligations of a law-abiding citizen without further supervision, the board shall discharge the person from parole. A parole officer shall periodically review all paroles assigned to the parole officer, and when the parole officer determines that any person assigned to the officer is able and willing to fulfill the obligations of a law-abiding citizen without further supervision, the officer may discharge the person from parole after notification and approval of the district director and notification of the board of parole. In any event, discharge from parole shall terminate the person's sentence. If a person has been sentenced to a special sentence under section 903B.1 or 903B.2, the person may be discharged early from the sentence in the same manner as any other person on parole. However, a person convicted of a violation of section 709.3, 709.4, or 709.8 committed on or with a child, or a person serving a sentence under section 902.12, shall not be discharged from parole until the person's term of parole equals the period of imprisonment specified in the person's sentence, less all time served in confinement.

Iowa Code § 906.15(1).

In August, the district court entered an order denying relief to Benford.[4] This appeal followed.

---

[3] Benford also raises other arguments concerning his sentence. We agree with the State that Benford's other arguments are not properly before us here.

[4] The district court's August 2019 order resolved both this case (PCCV121511) and a separate case numbered PCCV121013. Benford filed a separate appeal from the dismissal of case PCCV121013. We resolved that appeal through our opinion *Benford*, No. 19-1590, 2020 WL _____, also filed today.

**II.  Standard of Review**

"On judicial review of final agency action, we review for errors at law." *Houck v. Iowa Bd. of Pharmacy Exam'rs*, 752 N.W.2d 14, 16 (Iowa 2008).

**III.  Analysis**

We agree with Benford that this appeal turns on a question of statutory interpretation.[5]  The question is whether Iowa Code section 906.15 required—or even permitted—the IDOC to determine the date on which Bedford's special sentence under section 903B.1 will discharge.

After consideration, we answer that question in the negative.  We find the meaning of the Iowa Code in its words.  *See Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) (noting "in questions of statutory interpretation, '[w]e do not inquire what the legislature meant; we ask only what the statute means'" and "[t]his is necessarily a textual inquiry as only the text of a piece of legislation is enacted into law" (first alteration in original) (citation omitted)).  The words of section 903B.1 are clear: its special sentence lasts "for the rest of the [offender's] life."  So, as the district court correctly observed, "there is no date by which the special sentence is served in its entirety."

It is true that, under section 906.15(1), "a person . . . sentenced to a special sentence under section 903B.1 . . . *may* be discharged early from the sentence in

---

[5] We acknowledge Benford also raises due process concerns.  But we believe Benford is only contending that his due process rights are violated through improper interpretation and implementation of sections 906.15 and 903B.1.  Benford emphasizes that, "[t]o be clear[,] this is a case about *statutory interpretation*" of section 906.15.  Benford also states that his "whole argument" is about the "language" of sections 906.15 and 903B.1.  Likewise, we have focused our analysis on statutory interpretation.

the same manner as any other person on parole." (Emphasis added.) This provides the parole board authority to discharge Benford's sentence when the board determines he "is able and willing to fulfill the obligations of a law-abiding citizen without further supervision."[6] Iowa Code § 906.15(1). It does not mean IDOC can or must determine in advance a particular date on which Benford's sentence must be discharged. *See State v. Tripp*, 776 N.W.2d 855, 858–59 (Iowa 2010) (noting an offender "may be released from parole [under the lifetime special sentence] at any time" through "administrative decisions that have yet to be made").

But Benford argues section 906.15(1) also provides a "second way" for his special sentence to be discharged. He focuses on the first sentence of section 906.15(1), which states: "Unless sooner discharged, a person released on parole shall be discharged when the person's term of parole equals the period of imprisonment specified in the person's sentence, less all time served in confinement." In Benford's view, this language creates "a mandatory duty" for IDOC "to discharge him when he meets" certain "statutorily created criteria." Specifically, Benford argues, he is entitled to discharge when the time he has served in prison *plus* the time he has served on special sentence parole *totals*

---

[6] We note, however, section 906.15(1) requires certain offenders to serve a mandatory minimum period before they are eligible for discharge. Iowa Code § 906.15(1) ("[A] person convicted of a violation of section 709.3, 709.4, or 709.8 committed on or with a child, or a person serving a sentence under section 902.12, *shall not be discharged from parole until* the person's term of parole equals the period of imprisonment specified in the person's sentence, less all time served in confinement." (emphasis added)).

fifteen years, i.e., the prison term imposed for Benford's "underlying offense[s]" of third-degree sexual abuse and enticing away a minor.

We disagree. We question whether, by its terms, the first sentence of section 906.15(1) applies to the special sentence created by section 903B.1. The first sentence of section 906.15(1) addresses parole from a specified period of imprisonment, that is, a "period of imprisonment specified in [a] person's sentence." But the special sentence is not a sentence of "imprisonment." *Tripp*, 776 N.W.2d at 858 ("The imposition of lifetime parole is not tantamount to a sentence of life imprisonment."). Rather, it is a kind of parole. *See id.* ("The type of punishment imposed is parole."). Moreover, the "period" of the special sentence is not "specified" in any usual sense such as a number of days or years. *See* Iowa Code § 906.15(1). Rather, the special sentence continues "for the rest of the [offender's] life," an unknowable term. *See id.* § 903B.1.

In any event, assuming the first sentence of section 906.15(1) applies in the way Benford suggests, we find an irreconcilable conflict between the relevant statutes. In Benford's view, section 906.15(1) limits the special sentence to a defined period that cannot be longer than the prison sentence (fifteen years) Benford received for his underlying offenses. By its terms, though, section 903B.1 imposes a lifetime special sentence "in addition to" Benford's punishment for his underlying offenses.[7] We cannot reconcile these views.

---

[7] Indeed, section 903B.1 provides the special sentence "shall commence *upon completion of* the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense." (Emphasis added.)

But we find guidance in the "general/specific canon" of statutory interpretation. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183–88 (2012) (discussing the "general/specific canon"). It directs that "[w]here a general statutory provision conflicts with a special provision, and the conflict 'is irreconcilable, the special . . . provision prevails as an exception to the general provision.'" *State v. Wade*, 757 N.W.2d 618, 629 (Iowa 2008) (quoting Iowa Code § 4.7).

The canon is not difficult to apply here. Section 903B.1 is specific: it deals only with the special lifetime sentence for certain sex offenders. Conversely, the first sentence of section 906.15(1) is general. It applies to a wide range of offenses and offenders. So we conclude section 903B.1 governs here. It extends Benford's special sentence to "the rest of [Benford's] life," subject to the possibility of discharge "if the parole board determines that [Benford] is 'able and willing to fulfill the obligations of a law-abiding citizen without further supervision.'" *Tripp*, 776 N.W.2d at 858 ("It is also significant that the special sentence is not necessarily for life. Section 903B.1 provides for the possibility of release from [special-sentence] parole under chapter 906 if the parole board determines that the offender is 'able and willing to fulfill the obligations of a law-abiding citizen without further supervision.'" (quoting Iowa Code § 906.15)); *see State v. Agee*, Nos. 19-0345, 19-0131, 2019 WL 5791034, at *3–4 (Iowa Ct. App. Nov. 6, 2019) (rejecting argument that "under Iowa Code sections 903B.1 and 906.15(1), the maximum length of [an offender's] special sentence was ten years—the length of his prison sentence for his underlying sex offense—less credit for time served" and noting "if [the offender] exhibits that he 'is able and willing to fulfill the obligations of a law-

abiding citizen without further supervision,' the [Iowa Board of Parole] could decide to discharge his special sentence altogether" (footnote and citation omitted)).

## IV. Conclusion.

The IDOC was not required to provide Benford with a tentative discharge date for his lifetime special sentence under Iowa Code section 903B.1. So the district court was right to dismiss Benford's petition for judicial review.

**AFFIRMED.**